691 A.2d 1341

**STATE of Maryland**

v.

**Lawrence Joseph WALKER**

**No. 23, Sept. Term, 1996.**

Court of Appeals of Maryland.

April 10, 1997.

Gwynn X. Kinsey, Jr., Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Petitioner.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER, and WILNER, JJ.

WILNER, Judge.

Respondent, Larry Walker, was convicted in the Circuit Court for Montgomery County of robbery with a deadly weapon, for which he was sentenced to 15 years in prison. The Court of Special Appeals reversed that judgment on the ground that certain out-of-court statements made by respondent's wife, Robin Walker, and testimony by two detectives regarding those statements should not have been admitted into evidence.

The statements at issue were concededly hearsay and were not admissible under any of the categorical exceptions to the hearsay rule set forth in Maryland Rules 5–803 or 5–804. When Ms. Walker, summoned as a State's witness, exercised her privilege under Maryland Code, § 9–106 of the Courts and Judicial Proceedings article, not to testify against her husband, the court found her to be "unavailable" and admitted her extra-judicial statements and the detectives' testimony regarding them under the residual exception set forth in Rule 5–804(b)(5). We granted *certiorari* to consider whether the

statements were wrongfully admitted. We hold that they were and therefore affirm the judgment of the Court of Special Appeals.

## I. BACKGROUND

The incident giving rise to the charges against respondent occurred around 4:00 a.m. on June 10, 1994. The victim, Jose Iraheta, was riding his bicycle to work when a man accosted him, threw him off his bike, stuck a knife to his stomach, and demanded money. Iraheta gave his wallet to the robber, who took $60 and fled. Iraheta provided the police with a description of the robber, noting that he was a black male and was wearing a green hooded "sweater." Mr. Iraheta later identified respondent in court as the man who robbed him.

A few days after the robbery, Ms. Walker contacted county police officer Ivan Langford with some information about the robbery. Ms. Walker was not then married to respondent but was his girlfriend and the mother of his children. After speaking with her at a shelter where she was staying, Langford consulted with Detective Klarko who, along with Detective Bauers, interviewed Ms. Walker at her father's home on June 15, 1994.

Ms. Walker told the detectives that on June 11—the day after the robbery—she and respondent were walking along Twinbrook Parkway; as a police car passed by, respondent attempted to hide his face. When she questioned him about that, he admitted to her that he had committed a robbery the previous day. Specifically, he said that he had robbed an Hispanic man of $60, that he was wearing a hooded green sweatshirt at the time with the hood pulled over his face, and that he had thrown the sweatshirt away. The next day—June 12—they were together again in front of the Halpine View apartment complex. Respondent said that he needed to retrieve the sweatshirt he was wearing during the robbery. He went behind the complex, returned with a green sweatshirt, and threw it into a dumpster on Twinbrook Parkway.

The detectives, separately, made notes of Ms. Walker's statement, and she later signed both versions. According to Detective Klarko, Ms. Walker said that she had lived with respondent for a while but "couldn't handle it so she moved out." As recorded in his notes, she said that she had known respondent since 1989, that they had lived together intermittently since then, that in the past month he had been "doing more crack cocaine than usual," and that in March she moved from the apartment they had been sharing because she could no longer handle his drug use—it "was a bad influence on the kids." [1]

On September 1, 1994, Ms. Walker and respondent were married. Before trial commenced on January 12, 1995, Ms. Walker informed the State, which had summoned her as a witness, that she intended to invoke her privilege under Cts. & Jud. Proc. article, § 9–106 and refuse to testify against her husband. The State then moved, *in limine*, to have her signed statements to Detectives Klarko and Bauers admitted. At the *in limine* hearing, defense counsel noted his understanding that Ms. Walker made her statement to the police "because she wanted [respondent] to get some help for his drug problem," to which the prosecutor replied, "I believe that is accurate." [2]

Respondent objected to the statements on the ground that they were hearsay, that they did not fall within any of the

---

**1.** That part of the statement, along with parts dealing with other robberies to which respondent admitted, was redacted from the version admitted into evidence and given to the jury. It is in the full version of the statement signed by Ms. Walker and was placed in the record as an exhibit offered for identification only.

**2.** There is nothing in the record to indicate why Ms. Walker made the statements. During her brief testimony at the *in limine* proceeding, she was not asked and did not volunteer the reason. Detectives Klarko and Bauers were asked whether she had given such a reason, and they both said that they could not recall. Ms. Walker and respondent had been living apart for over three months when she contacted Officer Langford and made the statements, although according to her statement to Detective Klarko, they still saw each other regularly. On what basis counsel developed the notion that she made the statements to get respondent help for his drug problem is not clear.

exceptions to the hearsay rule set forth in Md. Rules 5–803, 5–804, or 5–805, and that general reliability was not an adequate basis upon which to justify their admission. He pointed out that the statements were actually written by the detectives and did not purport to be a verbatim repetition of what Ms. Walker may have said and that, if, indeed, they were given in desperation in order to get him help, they were not necessarily reliable.

The court concluded that the statements were admissible under the holding of the Court of Special Appeals in *Metz v. State,* 9 Md.App. 15, 262 A.2d 331 (1970), and under Rule 5–804(b)(5). With respect to the rule, the court first found that, by exercising her privilege not to testify against her husband, Ms. Walker was unavailable to the State as a witness and that the situation was "unique." It held that the statements were being offered as evidence of a material fact and that they were more probative of that fact than any other evidence that the State was able to procure through reasonable efforts. Based on a proffer from the State, which is not in the record and which, in any event, turned out to be inaccurate, the court assumed that the victim would be unable to identify the assailant.[3] It further found that the general purpose of the rules and the interest of justice would best be served by admission of the statements and that the statements appeared to be reliable. That last finding was premised on the assump-

---

**3.** The court stated, "In this case as I understand the proffer from the State, the victim in this case is more likely than not unable to identify his assailant in this case." There is no evidence in the record before us of any such proffer by the State at or prior to the *in limine* hearing.

In his opening statement to the jury, the prosecutor said that he did not know whether Mr. Iraheta "is going to be able to identify Mr. Walker as the person who robbed him. . . ." In fact, as we indicated, the prosecutor asked Mr. Iraheta whether he could identify his assailant and he did so, without equivocation. We do note, however, that, despite that positive identification, Mr. Iraheta acknowledged on cross examination that he did not see the face of the person who robbed him. He apparently had told the investigating officer that the assailant had a hood pulled tightly over his head, for that is asserted in the Statement of Charges filed by the police.

tion that Ms. Walker implicated appellant in order to get him help for his drug problem.

Mr. Iraheta was the first witness. As noted, he identified respondent as the robber. When Officer Langford and Detectives Klarko and Bauers were then called and began to testify about Ms. Walker's statements, respondent objected and received a continuing objection to that line of inquiry. The testimony was allowed, and redacted versions of the two statements written by the detectives and signed by Ms. Walker were admitted into evidence.

In his initial brief filed in the Court of Special Appeals, respondent argued that the statements were inadmissible under Md. Rule 5–804(b)(5) because they did not fall within the "rare and exceptional circumstances contemplated by the rule" and because they did not have "circumstantial guarantees of trustworthiness." In a reply brief, he added, for the first time, the contention that, because the crime occurred before the July 1, 1994 effective date of the new rules of evidence, Rule 5–804(b)(5) was inapplicable and the statements should have been excluded under previous Maryland common law. That argument was based on the provision in this Court's order formally adopting the Title 5 rules of evidence that those rules were to

"take effect July 1, 1994 and shall apply in all trials and hearings commenced on or after that date; provided, however, that ... no evidence shall be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994 . . . ."

The Court of Special Appeals concluded, in the first instance, that, because the trial commenced after July 1, 1994, Rule 5–804(b)(5) *was* applicable. It determined that, as a result, the initial inquiry was whether the evidence was admissible under that rule. If the evidence was admissible under the rule, a second inquiry was necessitated by the conditional language in our order, namely, whether the evidence also

would have been admissible under preexisting common law. *Walker v. State*, 107 Md.App. 502, 522–23, 668 A.2d 990, 999–1000 (1995).

With that framework, the appellate court held that the trial court erred in admitting the evidence under Rule 5–804(b)(5) because it failed (1) to make a clear finding that an exceptional circumstance existed and (2) to consider all of the factors bearing on whether the statements possessed circumstantial guarantees of trustworthiness, both of which, it held, were required by the rule. *Id.* at 526, 668 A.2d 990. In the first regard, the Court noted that, unlike its Federal counterpart, Md. Rule 5–804(b)(5) allows admission only under "exceptional circumstances," and it held that, upon finding such circumstances, the trial court is bound to "state on the record the factual findings supporting his [or her] conclusion." *Id.* at 527, 668 A.2d 990. No such explicit findings were made in this case.

With respect to the circumstantial guarantees of trustworthiness, the Court looked to the factors enunciated in *Simmons v. State*, 333 Md. 547, 636 A.2d 463, *recons. denied* (Mar. 4, 1994), *cert. denied, Maryland v. Simmons*, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994), and *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir.1961) as those necessary to consider. From *Simmons*, the Court extracted three factors—(1) the age, education, experience, and condition of the declarant, (2) the spontaneity of the statement, and (3) the motive of the declarant. From *Dallas County*, the Court drew another three factors—whether (1) the circumstances are such that a sincere and accurate statement would naturally be uttered and no plan of fabrication would be formed, (2) even if a desire to falsify might be present, other considerations, such as the danger of easy detection or fear of punishment would probably counteract its force, and (3) the statement was made under such conditions of publicity that an error, if it had occurred, would probably have been detected and corrected. *Walker, supra*, 107 Md. App. at 529–30, 668 A.2d at 1003–04.

Having recited those factors, the Court observed that reliability was supported by counsel's understanding (for which, as we have observed, there was no evidence in the record) that Ms. Walker gave the statement because she wanted respondent to get help for his drug problem, that the spontaneity of the statement was indicated by the fact that she initiated the interview and gave the statement in a non-hostile environment, and that, because she was not a suspect, she had no motive to lie to mitigate her involvement or overstate that of her then-boyfriend. It noted, however, that there were other factors bearing on reliability that the court should have considered as well—the fact that Ms. Walker waited four days to call the police, which detracted from the supposed spontaneity of the statement, and the possibility that her personal problems with respondent may have motivated her to fabricate a story out of anger or for some other purpose. *Id.* at 530–31, 668 A.2d 990.

The trial court was directed, on remand, to make specific findings as to each conditional element in Rule 5–804(b)(5) and if, after doing so, it were to conclude that the statement is admissible under the rule, to consider whether the statement also would have been admissible under common law, as it existed prior to July 1, 1994. Because that issue—the secondary inquiry—had not been clearly raised or decided in the circuit court, the Court of Special Appeals made no ruling on it. Citing *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), *recons. denied,* 297 Md. 230 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984), *Brown v. State,* 317 Md. 417, 564 A.2d 772 (1989), and a number of treatises and commentaries, the Court of Special Appeals observed that this Court had, in at least two circumstances, approved the admission of hearsay statements not falling within any of the recognized categorical exceptions, but it expressed no view on whether Ms. Walker's statement would be admissible under any common law noncategorical exception.

In this Court, the State urges that

"[w]here Walker denied the State direct access at trial to his extrajudicial admissions by marrying the hearer of those

admissions, and where there were other circumstances indicating the reliability of the admissions as reported by the hearer to the police, the trial court properly admitted the report of the admissions under the residual hearsay exception."

In support of that argument, the State takes issue with the Court of Special Appeals' conclusion that it is incumbent on the trial court to articulate on the record its reasoning process and its findings on each constituent element in Rule 5-804(b)(5). In that regard, the State posits, alternatively, that, if we decide to review the trial court's decision on a *de novo* basis, as a pure question of law, the trial court's reasoning process and findings become irrelevant and that, even if we were to review that decision as a discretionary one, we should apply the presumption that the court properly performed its duties and not insist that its thought process be laid out on the record. In particular, the State notes that a specific finding of exceptional circumstances is not required and that, even if it were, the record indicates such a finding by the trial court.

On the merits, the State urges that Ms. Walker's statement was admissible under the residual exception—that the recent marriage of Ms. Walker and respondent created an exceptional circumstance and that her statement did have equivalent circumstantial guarantees of trustworthiness. With minimal analysis, it adds that the statement would have been admissible under Maryland common law as well, citing *Tyler v. State,* 342 Md. 766, 679 A.2d 1127 (1996) for that proposition.

Not surprisingly, respondent has a different view. He contends that an explicit finding of exceptional circumstance is necessary and that, not only was no such finding made but no such circumstance existed—that "[t]here is nothing 'exceptional' about a wife refusing to testify against her husband or about a woman falsely accusing her husband or boyfriend of criminal behavior out of anger." For essentially the same reason, he argues that the statements possessed no equivalent circumstantial guarantee of trustworthiness—that "[a] statement to the police by a girlfriend claiming that her boyfriend

has confessed a crime to her is not inherently reliable." Even if the statements were admissible under the rule, he continues, they would not have been admissible under preexisting common law because, in his opinion, this Court had not adopted an equivalent residual exception as a matter of common law.

## II. *DISCUSSION*

### A. *Metz v. State*

As we observed, at trial the State argued that Ms. Walker's statements were admissible under the ruling of the Court of Special Appeals in *Metz v. State, supra,* 9 Md.App. 15, 262 A.2d 331, and the trial court found that to be the case, using *Metz* as an alternative basis for admissibility. That ruling was neither challenged by respondent nor offered by the State as an alternative basis for affirmance in the Court of Special Appeals. None of the briefs even cited *Metz,* and, not surprisingly, it was not mentioned in the appellate court's opinion.

Neither party has cited *Metz* in this Court. We mention it simply because, at the State's urging, it was relied upon by the trial court. *Metz* did not involve a residual exception, although it did present a partially analogous fact situation. Mr. Metz was charged with, and convicted of, assaulting his wife. When the case came to trial, Mrs. Metz exercised her privilege under the then current version of § 9–106 of the Courts and Judicial Proceedings article and declined to testify against her husband. The court then allowed the police officer who was called to the scene to recount what he saw upon arrival—Mrs. Metz with a knot on her head and a mutilated arm and a shotgun on the floor with a spent shell—and Mrs. Metz's statement that "she didn't do it." *Id.* at 18, 262 A.2d 331.

On appeal, Metz argued that his wife's statement was inadmissible under the statute, as it was covered by the privilege, and that, in any event, it was inadmissible as hearsay. The Court of Special Appeals held that the statute simply precluded a spouse from being compelled to "testify," that Mrs. Metz had not been so compelled, and that the Legislature did not intend "to exclude statements, *otherwise*

*admissible,* voluntarily made by one spouse to police officers, simply because that spouse refuses to testify against the other." *Id.* at 19–20, 262 A.2d 331 (emphasis added). Because the hearsay issue had not been decided by the lower court, the Court of Special Appeals held that it was not preserved for appellate review, although the Court did, as *dicta,* express its view that the statement "was part of the *res gestae.*"

Apart from the fact that that aspect of *Metz* was mere *dicta,* both this Court and the Court of Special Appeals have, since *Metz* was decided, abandoned the once-popular notion of a *res gestae* exception to the hearsay rule, which, accordingly, is no longer part of our law of evidence. *B & K Rentals v. Universal Leaf,* 324 Md. 147, 596 A.2d 640 (1991); *Cassidy v. State,* 74 Md.App. 1, 536 A.2d 666, *cert. denied,* 312 Md. 602, 541 A.2d 965 (1988). *Metz* does not, therefore, support the admission of a non-testifying spouse's out-of-court statements against a *hearsay* objection, and certainly not under a residual exception.

### B. *Md. Rule 5–804(b)(5) And Its History*

#### (1) *Maryland Common Law*

Prior to 1994, this Court, though on rare occasion allowing hearsay statements that did not fall within any of the recognized categorical exceptions to be admitted, had never formally or directly recognized a general residual exception to the hearsay rule, much less defined the scope or contour of such an exception. *See Cain v. State,* 63 Md.App. 227, 492 A.2d 652 (1985), *cert. denied,* 304 Md. 300, 498 A.2d 1186 (1985); *Cassidy v. State, supra.* Because it has been suggested that we may have done so, or come close to doing so, in *Foster v. State, supra,* 297 Md. 191, 464 A.2d 986, and *Brown v. State, supra,* 317 Md. 417, 564 A.2d 772, and because, as noted, the State, citing *Tyler v. State, supra,* 342 Md. 766, 679 A.2d 1127, contends that we did, in fact, recognize such an exception equivalent in scope to Rule 5–804(b)(5), we need to examine those cases.

Doris Foster was sentenced to death for murdering the manager of a motel in which Foster and her husband resided. At trial, she attempted to show that her husband may have committed the murder. The husband testified that he had had several confrontations with the victim over nonpayment of rent. On cross-examination, he was asked whether, on a particular occasion a few weeks before the murder, he had threatened the victim in response to her asking for payment of past-due rent, and he denied having done so. Foster then offered testimony from a friend of the victim that the victim had called her around that time in an agitated state, complained that she was in fear of her life, and asserted that the husband had threatened to kill her. The court, though finding that there was "a necessity" for the hearsay testimony, nonetheless sustained the State's objection on the ground that it was not sufficiently reliable.

On appeal, the defendant contended, not that the testimony was admissible under some exception to the hearsay rule, but rather that "the application of the hearsay rule, which prevented her from presenting a portion of her defense, rendered her trial fundamentally unfair and deprived her of due process of law." *Id.* at 202, 464 A.2d 986. In an opinion authored by Judge Davidson, which was initially filed as an opinion of the Court (four judges joining), but which, on reconsideration, became a plurality opinion joined in by only three judges, this Court, relying upon *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), found merit in Foster's complaint.

Judge Davidson's opinion does not purport to recognize any form of residual exception to the hearsay rule. Indeed, she made clear that the Court was *not* considering "whether under Maryland law the hearsay rule would exclude such testimony...." *Foster, supra,* 297 Md. at 210, 464 A.2d at 996. Rather, the opinion expressed the view that "[r]egardless of whether the proffered testimony is inadmissible because of Maryland's hearsay rule, under the facts of this case, its exclusion deprived the accused of a fair trial in violation of the

Due Process Clause of the Fourteenth Amendment." *Id.* The clear thrust of the opinion was a recognition that the evidence was, indeed, barred by the common law hearsay rule, despite the reliability and trustworthiness that the judges joining that opinion accorded it, *id.* at 211, 464 A.2d 986, but that, under the circumstances, that common law bar was trumped by the supervening requirement of due process.

Upon the filing of the opinion in *Foster,* the State moved for reconsideration. The motion was summarily denied, but Judge Eldridge filed an opinion concurring in the denial. In that opinion, he expressed the view that the decision should not have rested on a Constitutional basis and that the proffered evidence should have been admitted under State common law. In that regard, he cited *G. & C. Merriam Co. v. Syndicate Pub. Co.,* 207 F. 515 (2d Cir.1913), *appeal dismissed,* 237 U.S. 618, 35 S.Ct. 708, 59 L.Ed. 1148 (1915), and *Dallas County v. Commercial Union Assurance Co., supra,* 286 F.2d 388, for the proposition that hearsay evidence that is necessary, trustworthy, relevant, and material may be admissible even if it does not fall within one of the recognized categorical exceptions. He was careful, however, not to embrace Fed.R.Evid. 803(24) which, he observed, had "led to some excesses with which I could not agree" but simply declared that "the type of hearsay evidence involved in this case" was admissible. *Id.* at 234, 464 A.2d 986.

*Merriam* and *Dallas County* were mentioned again, for the same proposition, in *Brown v. State, supra,* 317 Md. 417, 564 A.2d 772. That case involved the revocation of Brown's probation based on a finding that, in violation of a condition of his probation, he possessed two guns. The State's knowledge that Brown had been in possession of the guns came from one Robin Bruce, who had them in his car when he was arrested. Bruce was charged with their possession, pled guilty, and, when facing sentencing and asked by the judge where he had obtained the guns, he implicated Brown. When later called as a defense witness in the trial of one Williams, who had been a passenger in the car, Bruce testified more precisely that

Brown had given him the guns and asked that he hold them until Brown could sell them.

Bruce was called as a witness at Brown's revocation hearing, but he declined to testify. The State then succeeded in having admitted into evidence the transcripts of Bruce's statement at his guilty plea and sentencing proceeding and his testimony at Williams's trial. The issue on appeal was whether that constituted error.

The statements recorded in the transcripts constituted hearsay, and Brown objected on both State hearsay and Federal confrontation grounds. In *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (1987), this Court had held that, in probation revocation proceedings, the formal rules of evidence were not applicable and that reasonably reliable hearsay may be received. It was not necessary, therefore, against a hearsay objection, to find a recognized exception—either categorical or residual. Against a confrontation challenge, however, the court had to engage in a multi-level inquiry. It needed to determine, first, whether the evidence fell within any of the exceptions to the hearsay rule, and, if it did, whether the exception and the evidence satisfied the criteria of the Confrontation Clause. If the evidence was not admissible under the rules applicable to revocation proceedings or the Confrontation Clause, it could not be admitted "unless it satisfies the standard of reasonable reliability and the trial judge makes, and states in the record, a specific finding of good cause." *Id.* at 553, 520 A.2d 1315.

*Brown* simply applied that approach to the circumstances. Bruce's statements, we concluded, could not be admitted as a declaration against penal interest—the only hearsay exception offered—because, given the context in which they were made, they possessed little indicia of reliability, a prerequisite established in *State v. Standifur*, 310 Md. 3, 526 A.2d 955 (1987). We turned, then, to whether the evidence was admissible under the relaxed standards applicable to revocation proceedings and the "good cause" exception to the ordinary require-

ments of confrontation. It was in that context that we observed, at 426, 564 A.2d 772:

"The proposition that hearsay evidence may be sufficiently reliable to justify its admission where necessary to further the cause of justice, even though it does not fall within a recognized exception is not new. [citing *Merriam* and *Dallas County.*] This general principle has now achieved recognition in the Federal Rules of Evidence. *See* Fed.R.Evid. 803(24) and 804(b)(5). The rule that reasonably reliable hearsay evidence may be admitted in probation revocation hearings is a logical extension of that proposition."

The Court went on to declare that the concept of reasonableness *"embraced in the relaxed rule of admissibility of 'reasonably reliable' hearsay evidence"* includes a consideration of whether the evidence addressed only a technical matter that must be proved or went to the heart of the defendant's conduct. *Id.* (emphasis added). The indicia of reliability that would support the former might not suffice to support the latter. In the *Brown* case, we held that the hearsay evidence was not peripheral but went to the heart of Brown's culpability and that it was not sufficiently reliable to warrant admission, even under the relaxed standards applicable to revocation proceedings. *Id.* at 427, 564 A.2d 772. *Compare Bailey v. State,* 327 Md. 689, 612 A.2d 288 (1992), applying the same analysis but finding the disputed hearsay evidence sufficiently reliable to be admitted under the relaxed standards applicable to a probation revocation proceeding; and *cf. Bergstein v. State,* 322 Md. 506, 588 A.2d 779 (1991), allowing the use of reliable hearsay at a conditional release proceeding.

As is our view with respect to *Foster,* we find nothing in *Brown* (or *Bailey* or *Bergstein* ) even remotely suggesting the adoption by this Court of a residual hearsay exception equivalent to our current Rule 5–803(b)(24) or 5–804(b)(5). Nor did we adopt any such rule in *Tyler v. State, supra,* as the State contends.

In *Tyler*, Tyler and Eiland had been charged with murdering James Bias. They were initially tried together and each was convicted—Tyler of first degree murder, Eiland of second degree murder. Those convictions were reversed because of an improper use of peremptory challenges by the State. *Tyler v. State*, 330 Md. 261, 623 A.2d 648 (1993). On remand, the defendants succeeded in having their cases severed, even though the Court of Special Appeals, in the earlier appeal, had held that severance was not necessary. *Eiland v. State*, 92 Md.App. 56, 73–74, 607 A.2d 42, 51 (1992). Eiland was tried first; he placed all of the blame on Tyler and was acquitted. At Tyler's trial, the State called Eiland as a witness but, contemptuously, he refused to testify. The State then succeeded in having a transcript of Eiland's testimony at his second trial admitted, and Tyler was again convicted of first degree murder.

A majority of the Court of Special Appeals, hearing the case *in banc*, affirmed, justifying admission of Eiland's recorded testimony as an inconsistent statement and as an extrajudicial identification. *Tyler v. State*, 105 Md.App. 495, 660 A.2d 986 (1995). We reversed, holding that the hearsay statement was not inconsistent with any testimony given by Eiland and did not constitute an extrajudicial identification. *Tyler v. State, supra*, 342 Md. at 776, 779, 679 A.2d at 1132, 1133. In this Court, the State, for the first time, also attempted to justify admission of the statement under a "residual hearsay exception." Because that issue had not been raised below, we expressly did not decide it but did note that, even if the issue had been raised below, Eiland's testimony would not have been admissible because it did not possess the sufficient guarantees of trustworthiness required by that exception. *Id.* at 780–81, 679 A.2d 1127. That is hardly a holding incorporating into our common law a residual exception equivalent in scope and content to Md. Rule 5–804(b)(5).

None of this is to say, of course, that the common law of evidence, either before or since the adoption of title 5 of the Maryland Rules, was entirely static, for it was, and is, not. The essence of the common law—indeed the heart of its

enduring value and majesty—is its flexibility, its potential and allowance for development and growth, and that is as much the case with respect to the law of evidence, and the hearsay rule in particular, as it is in other areas of the law.[4]

The hearsay rule itself was a common law rule, born in the 1500's and nurtured, at least in part, by concern over the effect of its absence. *See* LYNN MCLAIN, MARYLAND EVIDENCE § 801.1 (1987 & Supp.1995); Howard S. Chasanow and José Felipé Anderson, *The Residual Hearsay Exceptions: Maryland's Lukewarm Welcome*, 24 U.BALT.L.REV. 1, 6–7 (1994). The exceptions that were created over time were also the product of common law development, and it has never been reliably suggested that this Court is without authority to craft new exceptions or to modify or abrogate existing ones as the need might arise to do so. The point simply is that, prior to the adoption of the Title 5 rules of evidence, we had not, decisionally, adopted a residual exception equivalent to Rule 5–803(b)(24) or Rule 5–804(b)(5). We had, in a few opinions, cited or discussed Fed.R.Evid. 803(24) and 804(b)(5) and cases such as *Dallas County* that applied a judicially-fashioned residual exception, but we had not formally embraced them as part of Maryland law.

### (2) *Development of Rules 5–803(b)(24) and 5–804(b)(5)*

The development of these rules, containing a residual exception to the hearsay rule, has at least a 33–year history. The first 14 years were taken up with the development of the Federal Rules of Evidence; State development consumed the remaining 19 years.[5]

---

**4.** Md.Rule 5–102 now explicitly articulates that principle, directing that the rules of evidence be construed, among other things, to "promote the growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

**5.** For purposes of this analysis, we are using 1961, when the Chief Justice appointed a committee to study the feasibility and advisability of drafting a code of evidence for use in Federal courts, as the beginning point. As pointed out by the Commissioners on Uniform Laws in their prefatory note to the 1974 revision of the Uniform Rules of Evidence

A skeletal history of the Federal effort is provided in Senate Judiciary Committee Report No. 93–1277, accompanying H.R. 5463. 1974 U.S.Code Cong. & Ad. News 7051. That history commenced in 1961, when the Judicial Conference of the United States authorized the Chief Justice to appoint a committee to study the advisability and feasibility of uniform rules of evidence for use in Federal courts. The committee was appointed; it recommended that such rules be developed; and, in 1965, another committee—the Advisory Committee—was appointed to draft the rules.

The first draft emanating from the Advisory Committee was published in 1969. *Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates*, 46 F.R.D. 161 (1969). In proposed Rule 8–03, the Committee took the position that "under appropriate circumstances a hearsay statement is inherently superior to, or at least as good as, testimony given by the declarant in person at the trial...." *Id.* at 350 (Advisory Committee's Note to proposed Rule 8–03). Thus, the proposed rule on hearsay exceptions was framed in terms of general conditional admissibility, rather than in terms of general inadmissibility subject to categorical exceptions. Section (a) of the proposed rule provided:

---

(with 1986 Amendments), there is a much longer history. UNIF.RULES OF EVID., 13A U.L.A. 3 (1994 & Supp.1996) (prefatory note). In 1923, the American Law Institute considered the possibility of "restating" the law of evidence but decided against the project at that time. In 1938, upon the adoption of the Federal Rules of Civil Procedure, 21 of which dealt with evidentiary matters, the Attorney General of the United States suggested the formulation of rules of evidence for adoption by the Supreme Court. In 1942, under the guidance of such luminaries as Edmund Morgan and John Wigmore, a Model Code of Evidence was promulgated by the American Law Institute. Using that model code as a guide, the National Conference of Commissioners on Uniform State Laws, in 1953, published the Uniform Rules of Evidence, versions of which were adopted in Kansas, California, and New Jersey. *Id.* at 3–5. As indicated in the text of this opinion, however, and as acknowledged in the Commissioners' prefatory note, the real impetus for the development of evidence codes in the various States came when the Federal Rules of Evidence were drafted and ultimately adopted by Congress.

"A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available."

The rest of the proposed rule codified the recognized categorical exceptions to the hearsay rule, not, however, as exceptions to an exclusionary rule but as "illustrations" of statements that would be admissible under section (a). The Advisory Committee cited *Dallas County* as support for its approach. *Id.* at 351.

Following the consideration of comments received on that first draft, a second draft was published in 1971. *Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates*, 51 F.R.D. 315 (1971). That draft took a very different approach. The Advisory Committee noted that the traditional view of the common law was generally to exclude hearsay, subject to numerous exceptions that were supposed to furnish guarantees of trustworthiness, but that that scheme had been criticized as bulky and complex, as failing to screen good from bad hearsay realistically and as inhibiting the growth of the law of evidence. The Advisory Committee reported that it had considered three options: (1) abolishing the hearsay rule altogether and admitting all hearsay; (2) admitting hearsay possessing "sufficient probative force, but with procedural safeguards;" and (3) revising the existing system of categorical exceptions. *Id.* at 409–11.

The Committee rejected the first approach, largely because the Confrontation Clause would fill the void in criminal cases and create a schism between criminal and civil cases. It rejected the second approach, which would have abolished categorical exceptions in favor of "individual treatment in the setting of the particular case," as "involving too great a measure of judicial discretion, minimizing the predictability of rulings, enhancing the difficulties of preparation for trial, adding a further element to the already over-complicated congeries of pre-trial procedures, and requiring substantially

different rules for civil and criminal cases." *Id.* at 410. It therefore opted for the traditional common law approach of a general exclusion of hearsay, subject to a list of exceptions, and embodied that view in proposed Rules 803 and 804. The first 23 exceptions to proposed Rule 803 and the first five to Rule 804(b) were the familiar categorical ones. The Committee added as exception (24) to proposed Rule 803 and as exception (6) to Rule 804(b), "[a] statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." *Id.* at 422, 439.[6] It explained, in relevant part, that the categorical exceptions were designed to take advantage of the "accumulated wisdom and experience of the past" but that

"[i]t would ... be presumptuous to assume that all possible desirable exceptions to the hearsay rule have been catalogued and to pass the hearsay rule to oncoming generations as a closed system. Exception (24) and its companion provision in Rule 804(b)(6) are accordingly included. They do not contemplate an unfettered exercise of judicial discretion, but they do provide for treating *new and presently unanticipated situations* which demonstrate a trustworthiness within the spirit of the specifically stated exceptions. Within this framework, room is left for growth and development of the law of evidence in the hearsay area, consistently with the broad purposes expressed in Rule 102."

*Id.* at 437 (emphasis added).

In November, 1972, after considering further comment and over a dissent by Justice Douglas, who questioned the authority of the Court to adopt rules of evidence and the propriety of serving as a conduit of them to Congress, the Supreme Court promulgated the rules, with the residual exceptions articulated in the 1971 draft, to take effect July 1, 1973. *Rules of Evidence for United States Courts and Magistrates*, 56 F.R.D.

---

**6.** Congress eventually eliminated the exception comprising Rule 804(b)(5), so the residual exception, proposed as section (b)(6), became section (b)(5).

183 (1972). The Advisory Committee Note to those excep-
tions, as quoted above, remained in the draft.

Congress promptly suspended the effectiveness of the rules
to give it time to study them. Act of March 30, 1973, Pub.L.
No. 93–12, 1973 U.S.Code Cong. & Ad. News (87 Stat. 9) 11.
The main concern expressed at that time was not with the
hearsay rule, but with the proposed rules codifying certain
privileges.[7] *See* S.Rep. No. 93–1277, 1974 U.S.Code Cong. &
Ad. News, *supra*, at 7052–54. Indeed, the proposed rules on
specific privileges were rejected by Congress in favor of case-
by-case development. *Id.* at 7058–59.

The residual exception, as written in proposed Rules 803(24)
and 804(b)(6), was rejected by the House of Representatives
on the ground that it injected too much uncertainty into the
law of evidence and impaired the ability of practitioners to
prepare for trial. The House believed that proposed Rule 102,
directing the courts to construe the rules to promote growth
and development, would provide sufficient flexibility to admit
hearsay in appropriate cases under various factual situations
that might arise. H.R.Rep. No. 93–650, 1974 U.S.Code Cong.
& Ad. News, *supra*, at 7079.

The Senate disagreed. It concluded that, absent a residual
exception, the categorical exceptions might become "tortured
beyond any reasonable circumstances which they were intend-
ed to include ..." and that, in any event, those exceptions
"may not encompass every situation in which the reliability
and appropriateness of a particular piece of hearsay evidence
make clear that it should be heard and considered by the trier
of fact." *Id.* at 7065. Citing *Dallas County, supra,* as an

---

7. The draft contained 13 proposed rules on privileges. Rule 501
provided that, except as required by the Constitution or authorized by
statute or the rules, a person had no privilege to refuse to be a witness,
refuse to disclose any matter, refuse to produce an object or writing, or
prevent another from being a witness, disclosing a matter, or producing
an object or writing. Ensuing rules codified privileges for communica-
tions between lawyer and client, psychiatrist and patient, and husband
and wife, communications to clergymen, political votes, trade secrets,
state secrets, and identity of informers.

example, the Senate Judiciary Committee expressed the belief that "there are certain exceptional circumstances where evidence which is found by a court to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently listed exceptions, and to have a high degree of probativeness and necessity could properly be admissible." *Id.*

Though acknowledging the utility of a residual exception, the Senate was unwilling to accept the broad version submitted by the Supreme Court, which, it concluded, "could emasculate the hearsay rule and the recognized exceptions or vitiate the rationale behind codification of the rules." *Id.* at 7066. It approved, instead, a residual exception "of much narrower scope and applicability." *Id.* To qualify for admission, a hearsay statement not covered by one of the categorical exceptions would have to satisfy at least four conditions: (1) it must have "equivalent circumstantial guarantees of trustworthiness"; (2) it must be offered as evidence of a material fact; (3) the court must determine that the statement "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"; and (4) the court must determine that the general purpose of the rules and the interests of justice will best be served by admission of the statement. *Id.*

With those conditions, the Senate observed:

"It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The [Judiciary] committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions. Such major revisions are best accomplished by legislative action. It is intended that in any case in which evidence is sought to be admitted under these subsections, the trial judge will exercise no less care, reflection and caution than the courts did under the

common law in establishing the now recognized exceptions to the hearsay rule."

In concluding its discussion of the residual exception, the Senate added an additional cautionary note:

"In order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record. It is expected that the court will give the opposing party a full and adequate opportunity to contest the admission of any statement sought to be introduced under these subsections."

The Conference Committee accepted the Senate version, although it added to the text of the rule, as the fifth condition of admissibility, the Senate "expectation" that a party seeking to have evidence admitted under the residual exception notify adverse parties in advance of its intention to do so and required that the trial court make an actual finding that the evidence was of a material fact and that the general purpose of the rules and the interests of justice would best be served by admission of the statement. H.R.Conf.Rep. No. 93–1597, 1974 U.S.Code Cong. & Ad. News, *supra,* at 7105–06.

With those changes, Rules 803(24) and 804(b)(5) took effect, along with the rest of the Federal Rules of Evidence, on July 1, 1975.

The Federal rules were designed, of course, for use in the Federal courts. Twenty-two years earlier, in 1953, a first draft of Uniform Rules of Evidence was published. UNIF. RULES OF EVID., *supra,* note 5, at 4. That draft was revised in 1974 based on the version of the proposed Federal rules approved by the Supreme Court and submitted to Congress in 1972, and, once the Federal rules were adopted, a number of States began to adopt evidence codes based on the Federal and revised Uniform rules. Uniform Rules 803(24) and 804(b)(5), as so revised, were nearly identical to their Federal counterparts. *Id.* at 5.

In 1976, a special subcommittee of this Court's Standing Committee on Rules of Practice and Procedure, under the leadership of Judge Lawrence F. Rodowsky, then a lawyer-member of the Committee, began work on a code of evidence for Maryland. In February, 1977, the subcommittee completed work on draft rules. Although they were based largely on the recently enacted Federal rules, the subcommittee rejected the residual exception as "creating too much uncertainty." REPORT OF THE EVIDENCE RULES SUBCOMMITTEE OF THE STANDING COMMITTEE ON RULES OF PRACTICE AND PROCEDURE, 91–92, 94 (Feb.1977).

In June, 1977, the Rules Committee asked whether this Court desired the full Committee to proceed with the project. We answered in the negative, in part because of a concern over the expansive manner in which some Federal courts had been construing the residual exception. It was not until October, 1988, by which time approximately 35 States had adopted evidence codes based largely on the Federal rules, that this Court authorized the Rules Committee to proceed again to draft a code of evidence. The letter from Chief Judge Murphy noted, however, the Committee's assurance that it had no predisposition simply to recommend adoption of the Federal rules without some modifications.

After three years of work, the Evidence Subcommittee of the Rules Committee produced a draft code of evidence for public comment and consideration by the full Committee. That draft did not contain a residual exception, which was rejected by the subcommittee. *See* PROPOSED TITLE 5 OF THE MARYLAND RULES OF PROCEDURE: EVIDENCE, SUBCOMMITTEE DRAFT, STANDING COMMITTEE ON RULES OF PRACTICE AND PROCEDURE (Spring, 1992). After much discussion, the full Rules Committee was evenly split on the advisability of a residual exception. In its 125th Report to this Court, transmitting proposed title 5, the Committee advised that there was "no sentiment" for a residual exception without limiting language and a Committee Note, and that half of the Committee voted not to have the exception at all. 125TH REPORT OF THE STANDING COMMITTEE ON RULES OF PRACTICE AND PROCEDURE 124 (July,

1993). Those who favored the exception did so on the condition that the text of the rule make clear that any residual exception was to be used only "[u]nder exceptional circumstances" and that the sentiments expressed by the U.S. Senate in its Judiciary Committee Report, with some restyling, be appended as a Rules Committee Note.

This Court agreed with those on the Rules Committee who opted for a carefully limited residual exception. We adopted the Federal language but introduced it with the caveat that "[u]nder exceptional circumstances" statements otherwise allowed under the rule may be admitted. We also approved an extensive Committee Note expressing (1) our view that the residual exception was to "provide for treating *new and presently unanticipated situations*" which demonstrate a trustworthiness within the spirit of the specifically stated exceptions, and (2) our intent that the residual exception "will be used very rarely, and only in exceptional circumstances." Md. Rule 5–803(b)(24) (emphasis added).

## C. *Application Of The Rule*

### (1) *Analytical Framework*

■ From the foregoing discussion and a simple parsing of Rule 5–804(b)(5), it is apparent that six conditions need to be satisfied for evidence to be admissible under that rule:

(1) the witness must be "unavailable," as defined in § (a) of the rule; [8]

(2) there must be "exceptional circumstances";

(3) the statement must not be specifically covered by any of the other exceptions; [9]

---

**8.** This is not a requirement under Md.Rule 5–803(b)(24).

**9.** In his dissent, Judge Chasanow argues that this is not a condition to admissibility under the residual exception but is merely descriptive. His concern seems to be that, if regarded as a condition, this element would preclude admission under alternative theories.

Rules 5–803(b)(24) and 5–804(b)(5) seem quite clear. The only kind of statement that is subject to admission under those rules is "[a]

(4) it must have "equivalent circumstantial guarantees of trustworthiness";

(5) the court must determine that (i) the statement is offered as evidence of a material fact, (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts, and (iii) the general purposes of the rules and the interests of justice will best be served by admission of the statement into evidence; and

(6) the proponent of the statement has given the requisite advance notice of its intention to use the statement.

There is no dispute in this case over elements (1), (3), and (6). Ms. Walker was "unavailable" to the State as a witness; the State never suggested that her statement was specifically

---

statement not specifically covered by any of the foregoing exceptions...." We read that language as meaning that, if the statement *is* specifically covered by another exception, it does not qualify for admission under the residual exception, for the very good reason that admission under that exception would be unnecessary. At the very least, it is hard to imagine that there could be an "exceptional circumstance" justifying admission under the residual exception if the evidence is admissible under another exception.

Regarding this element as a prerequisite does not necessarily preclude a court from admitting evidence under alternative theories, as feared by Judge Chasanow. Without becoming mired in the debate over "near misses," which we expressly refrain from doing in this case, we think that it may be possible for evidence potentially to qualify for admission under a categorical exception, but for there to be a legitimate dispute over whether, as a matter of *law*, as opposed to a matter of fact, that exception applies, and for the court properly to determine that, if the evidence does not legally qualify for admission under the categorical exception, it would clearly qualify under the residual exception. If the court resolves the legal issue in favor of coverage, it could admit the evidence under the categorical exception but find that, should an appellate court conclude that the evidence was legally inadmissible under that exception, it would then be admissible and would have been admitted under the residual exception. This kind of situation is not likely to arise very often, and, if it does arise, the court would have to make all of the other requisite findings necessary to justify admission under the residual exception. In that circumstance, if an appellate court were, indeed, to conclude that the categorical exception did not apply, it could affirm admission under the residual exception, for the "otherwise specifically covered" condition would then be satisfied.

covered by any of the categorical exceptions; and respondent never complained that he did not have sufficient advance notice of the State's intention to offer the statement under Rule 5–804(b)(5). The record indicates, moreover, that the court did make the three findings required in element (5), and no specific challenge to those findings was made by respondent in this Court or in the Court of Special Appeals. The issues, therefore, concern elements (2) and (4)—whether an "exceptional circumstance" existed and whether the statement had "equivalent circumstantial guarantees of trustworthiness," although necessarily implicit in those issues is whether the court erred in concluding that the general purpose of the rules and the interests of justice would best be served by admission of Ms. Walker's statement.

In examining these issues, two threshold questions need to be addressed: what, if any, findings must the trial court make when allowing or disallowing evidence under a residual exception, and what standard of review do we apply when we consider the court's ruling? Those questions are obviously related.

The Court of Special Appeals, relying on *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir.1979), the U.S. Senate Judiciary Committee Report, *supra*, and an article in the University of Baltimore Law Forum, concluded that the trial court "must state on the record findings supporting the satisfaction of all of Rule 5–804(b)(5)'s requirements." *Walker v. State, supra*, 107 Md.App. at 527 n. 11, 668 A.2d at 1002 n. 11. In particular, the Court held that, if the judge finds the presence of exceptional circumstances, he or she must "state on the record the factual findings supporting his [or her] conclusion." *Id.* at 527, 668 A.2d 990. It also held that appellate review of a trial judge's decision should be on a *de novo* basis—whether the judge erred as a matter of law. *Id.* at 518, 668 A.2d 990.

The State takes exception to both of those holdings. It acknowledges that the rule requires specific findings on element (5) but asserts that no specific findings are required with

respect to whether exceptional circumstances exist or whether the statement at issue has equivalent circumstantial guarantees of trustworthiness. With some equivocation, the State accepts that a *de novo* standard of review may be appropriate in examining whether exceptional circumstances exist, as the legislative history of the Maryland rule suggests a "policy concern" over that element, but it maintains that a finding of "equivalent circumstantial guarantees of trustworthiness" should be reviewed on either an abuse of discretion basis or by examining whether that finding, which it regards as being factual in nature, is clearly erroneous. Respondent supports the Court of Special Appeals' conclusions that findings are required and that they are to be reviewed on a *de novo* basis.

■ We need to be careful, in considering the issue of required findings, to make clear what findings we are addressing. In all events, it is necessary for the court to record whether it is, in fact, admitting evidence under a residual exception. There can be no effective appellate review unless that much is done. Accordingly, prejudicial evidence admitted over a timely and proper objection will not be sustained on the basis of its admissibility under a residual exception unless the trial court has made clear that the evidence was admitted under that exception. *See United States v. Nixon,* 779 F.2d 126, 134 (2d Cir.1985); *U.S. v. Pelullo,* 964 F.2d 193, 202–03 (3d Cir.1992) (and cases cited therein), *reh'g denied,* July 27, 1992, *appeal after remand,* 14 F.3d 881 (1994), *and reh'g en banc denied,* Mar. 22, 1994; *United States v. Guevara,* 598 F.2d 1094, 1100 (7th Cir.1979); *U.S. v. Hogan,* 763 F.2d 697, 703 (5th Cir.1985). See also n. 9, *ante.*

■ Beyond that, and notwithstanding that the actual text of the rule purports to require findings by the trial court only with respect to element (5), we believe that, when the rule is read in light of its purpose and legislative history, it is incumbent on the trial court to make a specific finding, on the record, as to *each* conditional element. Evidence is not admissible under the residual exception unless each of the stated conditions is satisfied. Those conditions are in the nature of

"[p]reliminary questions concerning the ... admissibility of evidence" under Md. Rule 5–104(a), and it is necessary that the record reflect the court's determination of them. *See Huff v. White Motor Corp. supra,* 609 F.2d at 291; *United States v. Popenas,* 780 F.2d 545, 548 (6th Cir.1985); *State v. Horsley,* 117 Idaho 920, 792 P.2d 945, 952–53 (1990); *State v. Brown,* 341 N.W.2d 10, 14 (Iowa 1983); *Cummins v. State,* 515 So.2d 869, 873–75 (Miss.1987); *State v. Deanes,* 323 N.C. 508, 374 S.E.2d 249, 255 (1988), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2455, 104 L.Ed.2d 1009 (1989); *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843, 850 (1990); *In Interest of C. B.,* 574 So.2d 1369, 1373 (Miss.1990).

The record indicates that the trial court considered the six conditions and found that each was satisfied. We therefore need not determine here the consequences of a failure to touch that base.[10]

The principal concern expressed by the Court of Special Appeals was not that the trial court failed to announce these requisite findings but that it failed to explain on the record how it arrived at them—what factors it considered, what weight it gave to those factors, and the reasoning process it employed. Although there is some authority for the proposition that trial courts must make such a record, we do not believe that the failure to do so necessarily requires remand or reversal.

As we indicated, in approving a residual exception (and restoring it to the bill after its deletion by the House of Representatives), the Senate Judicial Proceedings Committee

---

**10.** A number of courts have reversed or vacated judgments in the absence of such findings. *See,* for example, *United States v. Popenas, supra,* 780 F.2d at 548; *State v. Dammons,* 121 N.C.App. 61, 464 S.E.2d 486, *stay denied, writ denied,* 342 N.C. 660, 465 S.E.2d 547 (1995). Others have proceeded either to determine for themselves whether the evidence was admissible (*State v. Daughtry,* 340 N.C.488, 459 S.E.2d 747 (1995), *cert. denied, Daughtry v. North Carolina,* —— U.S. ——, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996); *State v. Swindler,* 339 N.C. 469, 450 S.E.2d 907 (1994)) or have concluded that the lack of findings was harmless error (*People v. Fuller,* 788 P.2d 741 (Colo.), *reh'g denied,* April 2, 1990).

noted that "[i]n order to establish a well-defined jurisprudence, the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission should be stated on the record." S.Rep. No. 93–1277, 1974 U.S.Code Cong. & Ad. News, *supra,* at 7066. Some of the commentators on the Federal rules have echoed the sentiment of the Senate Judiciary Committee and urged that the trial courts make specific findings, although they seem, for the most part, to be speaking of findings as to the constituent conditions, not to a recitation of subsidiary findings or the court's reasoning process. *See,* for example, 4 CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 474, at 675 (2d ed. 1994 & Supp.1996) ("When a statement is admitted under the catchall, the court should make an on-the-record finding that the requirements have been satisfied."); 4 JACK B. WEINSTEIN AND MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(24)[01], at 803–428 to –429 (1996) ("Rule 803(24) requires five findings by the trial court. They should be made explicitly on the record...."); 2 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 803.24, at 559 n. 5 (1996 & Supp.1997).

A number of Federal and State appellate courts have required more detailed findings to be made by the trial court, but, generally, when faced with a lack of such recorded detail, they have proceeded to examine the record and determine for themselves whether the disputed evidence was admissible. *See,* for example, *Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1551–54 (9th Cir.1990); *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 713–14 (9th Cir.1992); *F.T.C. v. Figgie Intern., Inc.,* 994 F.2d 595, 608–09 (9th Cir.1993), *cert. denied,* 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994); *U.S. v. Bachsian,* 4 F.3d 796, 798–99 (9th Cir.1993); *Huff v. White Motor Corp., supra,* 609 F.2d at 291–95; *United States v. Hinkson,* 632 F.2d 382, 385–86 (4th Cir.1980). *Compare State v. Nelson,* 777 P.2d 479, 482 (Utah 1989), reversing for failure of the trial court to "make findings detailing its reasoning in admitting a statement...."

■ It is, of course, helpful to both the parties and any reviewing appellate court to know what factors the trial court relied on in making its findings and conclusions. A reasoned explanation may suffice to forestall an appeal, but even if an appeal is taken, a more detailed record will serve to focus the arguments and discussion and possibly alert the appellate court to important factors that might otherwise be overlooked. We do not agree, however, that the failure to announce subsidiary findings and conclusions necessarily requires reversal. It *may*, if the record is insufficient to permit the appellate court to undertake effective review, but it need not in every case.

This leads us to consider what the appropriate standard of review is of a decision to admit or exclude evidence under a residual exception. A number of Federal appellate courts have expressed the view that the decision is a discretionary one, much like the decision of a Federal trial court to admit or exclude evidence generally, calling for a restrictive standard of review. A common one applied by some of the courts is that the decision will not be disturbed "absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir.1982) (citing *Huff, supra* ). *See also Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358 (11th Cir.1986) (*en banc* ); *U.S. v. North*, 910 F.2d 843, 909 (D.C.Cir.1990); *U.S. v. Costa*, 947 F.2d 919, 923 (11th Cir.1991). As we have observed, other appellate courts have proceeded to review the record and draw their own conclusions as to whether the disputed evidence was admissible. *See Hal Roach Studios, supra*, 896 F.2d at 1551–54; *Mutuelles Unies, supra*, 957 F.2d at 713–14; *Figgie Intern., Inc., supra*, 994 F.2d at 608–09; *Bachsian, supra*, 4 F.3d at 798–99; *Huff, supra*, 609 F.2d at 291–95; *Hinkson, supra*, 632 F.2d at 385–86.

There are many rulings on the admission or exclusion of evidence that involve the exercise of discretion on the part of the trial court, and the exercise of that discretion will ordinarily not be disturbed on appeal. We are unwilling, however, to

accord the same broad discretion to the ultimate decision to admit evidence under the residual exception. As the Committee Note to Rule 5–803(b)(24) makes clear, the residual exceptions "do not contemplate an unfettered exercise of judicial discretion" and do not "establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 5–803 and 5–804(b)." The intent was that they would be used "very rarely, and only in exceptional circumstances." *Id.* We desired that the development of new hearsay exceptions be tightly controlled by us, and that is not feasible under an abuse of discretion standard of review. Such a loose and flexible standard of review would allow flatly inconsistent decisions, each being sustainable under an abuse of discretion standard, to stand, which would hardly achieve the goal, expressed by the Senate, of a "well-defined jurisprudence."

Some of the subsidiary determinations made by a trial court in arriving at its findings and conclusions may well be purely factual or discretionary ones, and, as to them, we will continue to apply a clearly erroneous or abuse of discretion standard. As to the conclusion itself, however, we shall apply a *de novo* standard of review. Only in that way can we be faithful to the limitations and caveats expressed in the rule and the Committee Note and assure a "well-defined jurisprudence."

### (2) *Exceptional Circumstances*

The first prerequisite to admissibility under the Maryland residual exception, and the one that is determinative in this case, is that there be "exceptional circumstances." As we have observed, that is a condition that we added to the text of the rule; it is not in the text of the Federal rule or the rules adopted in most of the States. Following the view of the Federal Advisory Committee and the U.S. Senate, we made clear in our endorsement of the Committee Note to Rule 5–803(b)(24) what we meant by "exceptional circumstances"—"new and presently unanticipated situations. . . ."

Judge Chasanow has expressed concern that, in using "new and presently unanticipated situations" as the benchmark for determining whether exceptional circumstances exist, we are being too restrictive. He complains that we have not indicated what *would* constitute such circumstances. That is true, but it is necessarily so. If this Court had a crystal ball and could have identified and defined those circumstances in which hearsay evidence not otherwise admissible should be admissible, we could have written an exception to cover those circumstances. The residual exceptions, limited by the "exceptional circumstances" condition, were intended for those rare situations that were not anticipated. This does not mean, as he supposes, that, if evidence is admitted once under the residual exception, upon a finding of exceptional circumstances, those circumstances could never again be found exceptional. The unanticipated circumstance can occur more than once and be found equally exceptional the second time. Naturally, if that circumstance becomes a frequent recurrence, we would likely consider creating a new categorical exception for it; that, indeed, is essentially how the existing categorical exceptions came into being.

What Judge Chasanow, in effect, proposes, although he seems reluctant to say it directly, is to ignore the "exceptional circumstances" condition that this Court deliberately added to the Federal language, with the clear knowledge that, in doing so, we were departing from that language. He would, essentially, construe the rule as it was originally proposed by the Advisory Committee and the Supreme Court, which a number of Federal courts seem effectively to have done, but which this Court, aware of that experience, expressly chose not to do. The fact that the evidence at issue may have equivalent, or even superior, circumstantial guarantees of trustworthiness does not alone suffice to warrant admission under the Maryland residual exception.

The State, in its brief, pays scant attention to this requirement, other than to argue that specific findings with respect to it are not required. The only circumstance that has even been suggested as being exceptional in this case is the fact that Ms.

Walker married respondent after she spoke to the detectives and then invoked her privilege not to testify against him. No one has offered any other circumstance as being exceptional, or even relevant; nor can we discern one. We therefore must determine whether that circumstance qualifies as "exceptional."

There are two statutory exclusionary rules in Maryland governing testimony by a spouse. Section 9–105 of the Courts and Judicial Proceedings article declares a spouse "not competent" to disclose any confidential communication between the spouses occurring during their marriage. That provision—generally regarded as a disqualification rather than a privilege—has been a part of Maryland law since at least 1864. *See* 1864 Md. Laws, ch. 109.

Section 9–106—the statute invoked by Ms. Walker—declares that, except when the defendant is charged with child abuse or assault and battery on his or her spouse, the spouse of a person on trial for a crime may not be compelled to testify as an adverse witness. That provision is regarded as a privilege, exercisable by the witness. The spouse is not incompetent to testify, and, save for confidential communications shielded by § 9–105, the defendant may not prevent the spouse from testifying as an adverse witness if the spouse chooses to do so. *See* MARYLAND EVIDENCE, *supra*, at § 505.1; JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 903(A) (2d ed. 1993 & Supp.1996).

Section 9–106 has been part of Maryland law since 1965. 1965 Md. Laws, ch. 835. Prior to its enactment, various rules regarding spousal testimony had, at different times, been in effect—ranging from making a person incompetent as a witness if his or her spouse was a party to the case, to allowing a person to testify for, but not against, his or her spouse, to abrogating the disqualification entirely and making spouses both competent and compellable, to affording a criminal defendant a privilege to preclude his or her spouse from testifying adversely, to adding to the defendant's privilege a privilege of the spouse to refuse to testify. *See Trammel v. United States,*

445 U.S. 40, 43–46, 100 S.Ct. 906, 909–10, 63 L.Ed.2d 186 (1980).

Each of these rules, as well as the current statute, was based on public policy. The early disqualification, dating back to the 1600's, was premised on the identity of interest between spouses: the party was incompetent as a witness because of his or her interest in the case and, as husband and wife were regarded as one, the spouse was tarred with the same presumed unreliability. Abrogation of the disqualification was presumably based on the notion that even interested persons should be allowed to testify, so that the trier of fact, in fulfilling its truth-seeking mission, can have as much relevant evidence as possible. As noted by the *Trammel* Court, "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public ... has a right to every man's evidence.'" *Id.* at 50, 100 S.Ct. at 912, quoting from *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884, *reh'g denied*, 339 U.S. 991, 70 S.Ct. 1018, 94 L.Ed. 1391 (1950).[11] The mutual privileges limiting spousal testimony implemented the precept that permitting a person to testify against his or her spouse would be destructive to the marriage and that the preservation of marriage was a greater social good than having the testimony.

Section 9–106 obviously represents a compromise among these competing social and jurisprudential policies—the same compromise reached 14 years later by the Supreme Court in *Trammel.* Subject to the exclusion of confidential communica-

---

**11.** By 1864 Md.Laws, ch. 109, the Legislature made parties and their spouses competent witnesses in civil cases but retained their disqualification in criminal cases. It declared, in relevant part, that a criminal defendant was not "competent or compellable to give evidence for or against himself," that a husband was not competent or compellable to give evidence for or against his wife, and that a wife was not competent or compellable to give evidence against her husband, "except as now allowed by law...." It was not until 1876 that criminal defendants were permitted to testify in their own defense. 1876 Md.Laws, ch. 357. By 1888 Md.Laws, ch. 545, the Legislature made spouses competent to testify in criminal cases, with the proviso that they were not competent, in a criminal or civil case, to disclose any confidential communication made by one to the other during the marriage.

tions, the statute allows a married person to testify, even over the objection of his or her spouse, but it does not compel the testimony. With the currently engrafted exceptions permitting the compulsion of spousal testimony in cases involving child or spousal abuse, we may fairly assume that, if the spouse exercises the privilege and refuses to testify, it is because he or she regards the marriage as important and enduring and does not wish to jeopardize it, in which event the policy behind the privilege is fully and properly implemented. If the spouse chooses to testify adversely, that policy is not harmed, for the likelihood then is that the marriage is already in serious jeopardy. *See Trammel, supra*, 445 U.S. at 52, 100 S.Ct. at 913: "When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation— their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve." By vesting the privilege in the witness/spouse, the law "furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." *Id.* at 53, 100 S.Ct. at 914.

▮▮▮▮ The privilege itself does not preclude the admission of out-of-court statements made by the spouse prior to the marriage. It affords protection only against being compelled to testify. That aspect of *Metz v. State, supra*, 9 Md.App. 15, 262 A.2d 331, we think is correct. That does not mean, however, that the existence of the privilege is not relevant, for it certainly is. As we have indicated, to warrant admission of the statement under Rule 5–804(b)(5) against a hearsay objection, the proponent must show an exceptional circumstance, not anticipated when the rule was adopted, and we fail to see how the exercise of a privilege based on legislatively declared public policy that predated the rule by nearly 30 years can constitute such an exceptional circumstance. There is nothing "unique" or exceptional about a spouse invoking his or her statutory privilege.

Lurking here, perhaps, is some discomfort with the fact that respondent and Ms. Walker married after she made her

statement but before trial. There have, to be sure, been cases in which the defendant and the witness have entered into a marriage immediately prior to trial, the inference being that the marriage was a sham, arranged solely to preclude the witness from testifying or having to testify. Most of those cases seem to have arisen under the common law rule that either made the spouse incompetent as a witness or allowed the defendant to preclude the testimony. *See* Michael G. Walsh, *Existence of Spousal Privilege Where Marriage Was Entered Into For Purpose of Barring Testimony,* 13 A.L.R.4th 1305 (1982). Some courts, in that circumstance, have refused to apply the privilege, although the prevailing rule seems to be, even in that circumstance, that the privilege applies. *Id.* at 1308.

That problem is not before us in this case, however. The State has not contended that the marriage between respondent and Ms. Walker was a sham. Nor was there any evidence, much less any finding, that it was a sham, or was entered into merely to allow her to invoke the privilege. The couple had been living together, intermittently, since 1989; they had children together; they married in early September, more than four months before trial. Accordingly, even if an unexpected sham marriage between a defendant and a material witness, arranged solely to preclude the State from offering relevant and important evidence, could arguably constitute an exceptional circumstance under the residual exception, this is not such a case.

## III. *CONCLUSION*

The trial court erred in admitting Ms. Walker's statement, and the testimony of the detectives regarding it, because there was no exceptional circumstance justifying admission under the residual exception provided for in Rule 5–804(b)(5). In light of that conclusion, we need not consider whether the statement possessed equivalent guarantees of trustworthiness, for, even if it did, the evidence would still have been inadmissible. For that reason, we shall affirm the judgment of the Court of Special Appeals.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.

CHASANOW, Judge, dissenting.

I respectfully dissent. This case presents a textbook example of the kind of hearsay evidence that should be admitted under the Maryland residual exception for "unavailable" witnesses. Maryland Rule 5–804(b)(5). That rule provides:

"(5) *Other Exceptions*—Under exceptional circumstances, the following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness: A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant."

This hearsay exception and its counterpart, Md. Rule 5–803(b)(24), which is identically worded but leaves out the requirement that the hearsay declarant be "unavailable," will be collectively referred to as the residual exceptions. When residual exception is referred to in the singular, I will be referring to the residual exception at issue in the instant case, Md. Rule 5–804(b)(5).

The majority opinion acknowledges that the trial judge found the hearsay statement at issue to be admissible under the residual exception after he "considered the six conditions [that are required for admissibility under the residual excep-

tion] and found that each was satisfied." 345 Md. 293, 322, 691 A.2d 1341, 1355 (1997). That finding was clearly supported and should be affirmed. As the majority concedes, the trial judge does not have to explain on the record how he or she arrived at these findings or the reasoning process employed. Even if the trial judge gave the wrong reason for admitting the hearsay, this Court would affirm if the evidence were admissible. *Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979) (stating "where the record in a case adequately demonstrates that the decision of the trial court [admitting evidence] was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm. In other words, a trial court's decision may be correct although for a different reason than relied on by that court."), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

### APPELLATE REVIEW

It is interesting to note that the Evidence Subcommittee of the Standing Committee on Rules of Practice and Procedure (Rules Committee) apparently rejected the residual exceptions not because they might have *let in* too much unreliable hearsay, but because they might have *kept out* too much reliable hearsay. In the final Evidence Subcommittee Draft dated Spring, 1992, and sent to the Rules Committee, as well as to each judge of the Court of Appeals, the Reporter's Note states:

"In recommending against these [residual] exceptions the Subcommittee is in agreement with the Rodowsky Committee, which was concerned that the 'catchalls' might be too restrictive. Because of the high substantive standard set by the Rule, as well as the rather elaborate procedural requirements, the Rodowsky Committee opined that 'it could be argued that this Rule will actually limit the authority of judges to admit reliable hearsay.' "

Court of Appeals Standing Committee on Rules of Practice and Procedure, Proposed Title 5 of the Maryland Rules of Procedure: Evidence, Subcommittee Draft, Spring 1992.

When a trial judge is asked to make a determination of admissibility of hearsay under the residual exceptions, Md. Rule 5–104(a) is applicable. That rule governs the trial judge in making factual findings and resolving questions relating to the admissibility of evidence. It provides that, in making fact findings necessary to resolve issues of admissibility of evidence, the judge "may, in the interest of justice, decline to require strict application of the rules of evidence, except those relating to privilege and competency of witnesses." Md. Rule 5–104(a). The preliminary fact findings made by the trial judge, in resolving whether residual exception hearsay is admissible, should be affirmed unless clearly erroneous. On the other hand, any decision to admit residual exception hearsay involves some weighing and determinations that, in effect, create new hearsay exceptions by serving as precedent or persuasive authority for admitting hearsay not within the traditional exceptions. These policy aspects of the decision to admit residual exception hearsay deserve heightened appellate scrutiny. I agree with the majority at least to the extent that they seem to require *de novo* appellate review of such factors as whether there are exceptional circumstances and equivalent guarantees of trustworthiness. These factors need *de novo* review because of their precedential effect, as well as the need for uniformity and predictability in the admission of residual exception hearsay. Other factors, such as weighing the materiality and relative probative value of the proffered hearsay, should be accorded more deferential review because of the trial judge's superior position to view the witnesses and gauge the relative impact and materiality of the evidence.

Federal appellate reluctance to reverse a trial judge's decision to admit residual exception hearsay may be a reason for the opinion expressed by several members of the Rules Committee that too much unreliable hearsay is being admitted in some federal courts. Federal appellate courts accord trial judge's great deference in decisions to admit hearsay under the residual exception. *See, e.g., U.S. v. North,* 910 F.2d 843, 909 (D.C.Cir.1990) ("We agree with the Eleventh Circuit that an appellate court should be 'particularly hesitant to overturn

a trial court's admissibility ruling under the residual hearsay exception absent a "definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." ' *Balogh's of Coral Gables, Inc. v. Getz,* 798 F.2d 1356, 1358 (11th Cir.1986) (*en banc* ) (quoting *Page v. Barko Hydraulics,* 673 F.2d 134, 140 (5th Cir.1982))"); *S.E.C. v. First City Financial Corp., Ltd.,* 890 F.2d 1215, 1225 (D.C.Cir.1989) ("Since the residual hearsay exception depends so heavily upon a judgment of reliability, typically we would be particularly deferential to the trial court's determinations under Rule 803(24)."); *Page v. Barko Hydraulics,* 673 F.2d 134, 140 (5th Cir.1982) (holding that the trial judge's "considerable discretion" in applying Rule 803(24) will not be disturbed absent a "clear error of judgment"); *Doe v. U.S.,* 976 F.2d 1071, 1076–77 (7th Cir. 1992) (quoting *Littlefield v. McGuffey,* 954 F.2d 1337, 1342 (7th Cir.1992), in turn quoting *Geitz v. Lindsey,* 893 F.2d 148, 150–51 (7th Cir.1990) (citations omitted, emphasis in original)) ("The relevant benchmark is not how we would have ruled had we been standing in the trial judge's shoes, but rather, 'whether *any* reasonable person could agree with the district court.' "), *cert. denied,* 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). The federal appellate abuse of discretion standard of review and reluctance to reverse a trial judge's decision to admit residual exception hearsay could have the effect of greatly expanding the use of the residual exception hearsay. With Maryland's increased appellate scrutiny, there should be little danger that the residual exceptions will be abused or will swallow up the general hearsay prohibition.

## FACTORS FOR ADMISSIBILITY

The six or seven conditions that must be satisfied in order to admit hearsay under the residual exceptions are:

(1) There must be exceptional circumstances that warrant the application of the residual exceptions;

(2) there must be trustworthiness surrounding the making of the hearsay statement equivalent to the trustworthiness of

other enumerated hearsay exceptions. This is the most significant requirement and one that, on appeal, should always be reviewed *de novo;*

(3) there must be necessity for the hearsay established by a showing that the statement is more probative on the matter for which it is offered than any other evidence that could reasonably be procured by the proponent;

(4) the hearsay statement must be offered to prove a fact material to the litigation;

(5) the general purposes of the rules of evidence and the interests of justice must be best served by the introduction of the hearsay;

(6) reasonable advance notice of the intent to offer residual exception hearsay must be given; and

(7) the witness must be unavailable for Md. Rule 5–804(b)(5) to apply, although this is not necessary for Md. Rule 5–803(24) to apply.

My analysis differs from the majority's primarily in my elimination of the majority's requirement that "the statement must not be specifically covered by any of the other exceptions." 345 Md. at 318, 691 A.2d at 1353. The reference in the residual exception rules from which this is taken is meant as a description, not a limitation. There can be hearsay statements that overlap and fit within an existing hearsay exception and, because of the exceptional circumstances and additional factors enhancing its reliability, could also fit within the residual exception; the two need not be mutually exclusive. Trial judges or lawyers should not have to choose, at their peril, whether to use an existing exception or the residual exception. We should not prohibit hearsay from being offered and/or admitted by a trial judge under both theories.

The intermediate appellate court held that the trial judge erred in admitting the hearsay statements at issue because he failed to make a clear finding that there were exceptional circumstances and failed to consider all factors bearing on the circumstantial guarantees of trustworthiness. *Walker v.*

*State,* 107 Md.App. 502, 526, 668 A.2d 990, 1002 (1995). This Court holds that there are no "exceptional circumstances" and, therefore, does not address the "equivalent guarantees" of trustworthiness. I believe there are both exceptional circumstances and equivalent guarantees of trustworthiness justifying the admission of the residual exception hearsay offered in the instant case.[1]

## FACTS

On June 10, 1994, Mr. Jose Iraheta, an Hispanic male who speaks no English, was riding his bicycle to work along Twinbrook Parkway in Montgomery County, Maryland. Mr. Iraheta was accosted by a black male wearing a green, hooded shirt with the hood pulled tightly over his head. The man pushed Mr. Iraheta down and robbed him at knife point of $60.00. Mr. Iraheta reported the robbery to the police, but told the officers he did not see the face of his assailant because of the hood and because Mr. Iraheta kept his head down during the robbery.

The next day, June 11, 1994, Robin Hammond, who was later to become Robin Walker (hereinafter Ms. Walker), was walking along Twinbrook Parkway in the same area as the robbery with her friend, Mr. Walker, and their daughter. A police car drove past and Mr. Walker "hung his head down ... to hide his face." When questioned about this odd behavior, Mr. Walker told his companion that he had robbed an Hispanic male of $60 the night before in the same area. Mr. Walker also indicated that he had discarded the green shirt he was wearing at the time of the robbery. Later, in Ms. Walker's presence, Mr. Walker retrieved a green, hooded

---

**1.** Technically the issue in the instant case involves double hearsay. Mr. Walker's confession of the armed robbery was an admission by a party-opponent under Maryland Rule 5–803(a)(1). Ms. Walker's hearsay statements were offered under Md.Rule 5–804(b)(5). Mr. Walker's admission by a party-opponent was clearly admissible if Ms. Walker's statement was admissible under the residual exception. *See* Md.Rule 5–805 (a hearsay statement containing another hearsay statement is admissible if both fall within any hearsay exception).

sweatshirt, which he identified as the shirt he wore during the robbery; he then threw the shirt in a dumpster.

On June 15, 1994, Ms. Walker, nee Hammond, contacted the police and related Mr. Walker's confession to two detectives. Her statement was reduced to writing by each detective, and she signed both writings. Ms. Walker also indicated to the police that Mr. Walker was the father of her children and that she and Mr. Walker had lived together "intermittently" since 1989, but that about March 9, 1994, because of Mr. Walker's escalating drug use, she moved out of the residence they shared and moved into a shelter.

Five days later, on June 20, 1994, Mr. Walker was arrested and jailed in default of bond. The application for the statement of charges indicated that on June 10, 1994, Jose Iraheta was robbed of $60 by a black male wearing a green, hooded sweatshirt pulled tightly over his head. The probable cause for the application was that on June 15, 1994, a "confidential source" heard Mr. Walker admit that he had robbed an Hispanic male of $60 and that during the robbery he was wearing a green, hooded sweatshirt. On August 3, 1994, Mr. Walker, through defense counsel, filed several motions including a request for discovery, which included a request for the identity of any confidential informant, a motion to suppress evidence, a motion to sever counts, and a motion for "marriage leave" from the jail. The motion for marriage leave was denied.

Immediately before Mr. Walker's robbery case was called for trial on January 12, 1995, a pre-trial hearing was held at which Ms. Walker produced a marriage license showing that she and Mr. Walker were married by the Clerk of the Court on September 1, 1994, apparently without "marriage leave." Ms. Walker also told the State's Attorney that she refused to testify against her new husband. At that hearing, the judge found that Ms. Walker's hearsay statements to the police in which she related Mr. Walker's confession were admissible under the residual exception, Md. Rule 5–804(b)(5). In his findings, the trial judge concluded that one of the reasons that

Ms. Walker's statements were reliable was that they were made by Ms. Walker to police in order to get Mr. Walker help for his drug problem. This finding was based on a proffer by defense counsel that "[i]t is my understanding that when the statements were made Ms. Hammond also at the time indicated or Ms. Walker indicated at the time that she was doing this because she wanted Mr. Walker to get some help for his drug problem." The State's Attorney agreed with the proffer stating: "I believe that is accurate."

Walker was convicted by a jury of robbery with a dangerous and deadly weapon, and because of his "major" prior record, he was sentenced to 15 years incarceration.

## EXCEPTIONAL CIRCUMSTANCES

In ordinary circumstances, hearsay is only admitted if it falls within one of our codified hearsay exceptions in Md. Rule 5–803 and Md. Rule 5–804. These codified exceptions are categories or pigeonholes that cover the generally encountered forms of trustworthy and necessary hearsay. Ordinarily, if hearsay does not fall within our codified hearsay exceptions, it is not trustworthy and not admissible. The codified hearsay exceptions are generally adequate to admit all trustworthy and necessary forms of hearsay.

The residual hearsay exceptions in Md. Rules 5–803(b)(24) and 5–804(b)(5) require "exceptional circumstances." This was made explicit by this Court when we expressly added the phrase "under exceptional circumstances" to our residual exception rules. A significant number of federal cases hold that "exceptional circumstances" is also a requirement of the residual exceptions in the federal rules based on the legislative history of the federal rules. The Senate Judiciary Committee, in its report to Congress, stated:

"It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances."

Senate Comm. on Judiciary, Fed. Rules of Evid., S.Rep. No. 93–1277, 93d Cong., 2d Sess. 18 (1974); 1974 U.S.C.C.A.N. 7051, 7066. Some of the cases recognizing that the residual

exceptions can only be used in exceptional circumstances are: *United States v. Kim,* 595 F.2d 755, 765 (D.C.Cir.1979) ("The legislative history of this exception makes it very clear that this was intended to be a narrow exception to the hearsay rule, applying only in exceptional cases."); *United States v. Heyward,* 729 F.2d 297, 299–300 (4th Cir.1984) ("The legislative history of the rules puts it more strongly: 'It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.' Fed.R.Evid. 803 Senate committee note (quoted in *United States v. Kim,* 595 F.2d 755, 765 [ (D.C.Cir.1979) ] )"), *cert. denied,* 469 U.S. 1105, 105 S.Ct. 776, 83 L.Ed.2d 772 (1985); *United States v. Williams,* 809 F.2d 1072, 1083 (5th Cir.) ("Rule 804(b)(5) is 'to be used only rarely, in truly exceptional circumstances.' *United States v. Thevis,* 665 F.2d 616, 629 (5th Cir.)(footnote omitted), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)"), *cert. denied,* 484 U.S. 896, 108 S.Ct. 228, 229, 98 L.Ed.2d 187, *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216, and *cert. denied, Orellana v. United States,* 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987); *In re Corrugated Container Antitrust Litigation,* 756 F.2d 411, 415 (5th Cir.1985)("We sounded a note of caution in the use of this hearsay exception in *United States v. Thevis,* 665 F.2d 616, 629 (5th Cir.1982), observing that the language of the rule and the legislative history left no doubt of Congress' intent 'that the 804(b)(5) residual exception was to be used only rarely, in truly exceptional circumstances.' "); *U.S. v. Collins,* 66 F.3d 984, 986–87 (8th Cir.1995)("This rule applies only in 'rare and exceptional circumstances.' *Stokes v. City of Omaha,* 23 F.3d 1362, 1366 (8th Cir.1994)."); *Stokes v. City of Omaha,* 23 F.3d 1362, 1366 (8th Cir.1994)("After reviewing the contents of and circumstances surrounding Swanson's affidavit, we do not find that it falls within the rare and exceptional circumstances required by our cases applying Rule 804(b)(5)."); *U.S. v. Gaines,* 969 F.2d 692, 697 (8th Cir.1992)("Rule 804(b)(5) is to be used rarely, and only in exceptional circumstances.")(internal quotations omitted; citations omitted); *United States v. Love,* 592 F.2d 1022, 1026 (8th Cir.1979)("The intent of Congress was that Rule

804(b)(5) would be used very rarely, and only in exceptional circumstances."); *U.S. v. Fernandez,* 892 F.2d 976, 982 (11th Cir.1989)(quoting *United States v. Thevis,* 665 F.2d 616, 629 (5th Cir.)(footnote omitted), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982))(" 'The Senate Judiciary Committee's report on the Federal Rules of Evidence stated that the 804(b)(5) residual exception was to be used only rarely, in truly exceptional circumstances.' "); *contra United States v. American Cyanamid Co.,* 427 F.Supp. 859, 865–66 (S.D.N.Y.1977)("Neither the Rule, nor the cases in this Circuit interpreting the Rule, however, impose any express limitation concerning exceptional cases.").

The exceptional circumstances requirement should not be read as a bar to all hearsay except hearsay statements made under bizarre, unique, and never previously contemplated situations. The majority does not really tell us what could constitute exceptional circumstances or even what factors should be used to determine exceptional circumstances. We are only told that there are no exceptional circumstances in the hearsay statements offered in the instant case. Surely the kind of exceptional circumstances envisioned by the majority are not things like the hearsay declarant had natural green hair and spoke fifteen languages. Exceptional circumstances should be the threshold for, and related to, our analysis of all of the other factors required under the residual exceptions.

Exceptional circumstances, however, cannot be determined theoretically or out of context. When we speak of exceptional circumstances, we mean exceptional circumstances that justify making the proffered hearsay an exception to the prohibition against hearsay, even if it does not fit into the traditional exceptions. This requires some familiarity with what justifies the creation of a hearsay exception.

As Judge Learned Hand noted: "[T]he requisites of an exception of the hearsay rule [are] necessity and circumstantial guaranty of trustworthiness." *G. & C. Merriam Co. v. Syndicate Pub. Co.,* 207 F. 515, 518 (2d Cir.1913)(citing WIG-MORE, EVIDENCE §§ 1421, 1422 and 1690). Occasionally there

are forms of hearsay that do not fit within the codified hearsay exceptions or pigeonholes but that should be admitted in the interests of justice and because the hearsay has at least the same circumstantial guarantees of trustworthiness and the same necessity inherent in the codified exceptions. In these exceptional circumstances, we compare the proffered hearsay to the reasons for creating a hearsay exception, which we have identified as the requirements for the residual exceptions; if those requirements are met, the hearsay may be admitted. The broad categories or pigeonholes of the codified hearsay exceptions are not meant to be a closed system; the residual exceptions are our recognition that there are equally reliable, equally necessary forms of hearsay that are too unique and too *sui generis* to be codified. The admission of hearsay statements under the residual exceptions is generally fact-specific and depends on the unique context surrounding the making of the statements that makes the statements especially reliable, as well as the unique necessity for the statement in the particular litigation. We cannot expect to have a separate hearsay exception for each unique, exceptional, and fact-specific circumstance that has occurred or could conceivably occur; instead, we have the residual exceptions.

Exceptional circumstances should include new and presently unanticipated situations, but should not be limited to those situations exclusively. Congress and this Court, by providing that the residual exceptions are appropriate for new and unanticipated situations did not intend that, in any recurring situation, residual exception hearsay could only be used once, and thereafter, it must be added to our codified evidence rules because if that situation occurs a second time, it is not new and presently unanticipated. There are a few emerging, general areas where the residual exceptions have been used in repeated instances based on the facts of the case and the particular indicia of trustworthiness surrounding the statement. For example, in several cases the grand jury testimony of particularly reliable independent witnesses who have been murdered after appearing before the grand jury, but before the trial, has been admitted under the residual exception.

Federal Evidence Rule 804(b)(5). *See, e.g., U.S. v. Zannino,* 895 F.2d 1, 6 (1st Cir.)(citing cases from other circuits), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). This form of residual hearsay should not be rejected merely because it has been admitted in prior cases, and therefore, it is no longer new and presently unanticipated.

Turning to the exceptional circumstances in the instant case, the majority states, "[t]he only circumstance that has even been suggested as being exceptional in this case is the fact that Ms. Walker married respondent after she spoke to the detectives and then invoked her privilege not to testify against him. No one has offered any other circumstance as being exceptional, or even relevant; *nor can we discern one.*" 345 Md. at 326, 691 A.2d at 1357 (emphasis added). If the majority could not discern other exceptional circumstances in the instant case, it certainly did not look very hard.

The Walker marriage is the only arguably exceptional circumstance discerned by the majority, but that event is probably not an exceptional circumstance, because it is merely the fact that makes Ms. Walker unavailable to the State and does nothing to enhance the trustworthiness of Ms. Walker's hearsay statements. If, however, "exceptional circumstances" are not meant to be interrelated to the reasons for creating any hearsay exception, perhaps the Walker marriage might be an exceptional circumstance. Although living together "intermittently" for approximately six years and having children together had not motivated Mr. and Ms. Walker to marry, approximately six weeks after Mr. Walker was arrested and jailed as the result of information provided to police by Ms. Walker, Mr. Walker sought "jail leave" to marry Ms. Walker. As a result of Mr. Walker's marriage to the police informant, whose information resulted in Mr. Walker's incarceration, the informant was able to avoid testifying against her new husband. This is an unusual and unique marriage, but, because the marriage does not make Ms. Walker's pre-marital statements exceptional or trustworthy, I do not think it is what the Senate or this Court meant as an exceptional circumstance that would qualify for the residual exception.

If a Maryland appellate court is going to review a trial judge's decision to admit residual exception hearsay *de novo*, the appellate court has an obligation to, at least, give some deference to the trial judge's superior position to view the case. Before an appellate court reverses a trial judge because it discerns no exceptional circumstances or no equivalent guarantees of trustworthiness, the appellate court should diligently search for those factors that support the trial judge's ruling. The circumstances that, collectively, make Ms. Walker's hearsay statements exceptional, trustworthy, and deserving of admission even though they do not fall within any of the other codified hearsay exceptions are:

(1) As stipulated by counsel and found by the trial judge, Ms. Walker's motive in recounting Mr. Walker's confession was to get help for Mr. Walker; her motives were not to hurt Mr. Walker. Her motive should inspire her to tell the truth to the police.

(2) It is reasonable to assume that Ms. Walker knew or was told by the police that a false statement to the police about the identity of a person who committed a crime could be punishable by a jail penalty. *See* Maryland Code (1957, 1996 Repl. Vol.), Article 27, § 150. Knowing or even suspecting that you could be prosecuted and jailed for a false statement adds unique trustworthiness.

(3) Ms. Walker knew that, if she lied about the identity of the robber, her lie would almost certainly be revealed because the victim would tell the police that Mr. Walker was not the robber. The fact that her lie should be immediately brought to light when the victim and Mr. Walker meet is a unique circumstance inspiring truthfulness.

(4) The self-verifying details about the robbery in Ms. Walker's statements uniquely established the trustworthiness of her information. She related extensive details of this street robbery, which was not witnessed by anyone but the robber and the victim and was certainly not reported in the media. Ms. Walker recounted that the victim was an Hispanic male; $60 was taken in the robbery; the robber wore a green,

hooded shirt, which Ms. Walker saw and could describe; the robbery occurred on June 10, 1994; and the robbery occurred in a designated area on Twinbrook Parkway. This information conclusively indicates that Ms. Walker must have talked to the robber or the victim. Ms. Walker could not have gotten these details from the victim because he did not speak English. She must have either been the robber or been extensively confided in by the robber. The robber was a male, therefore, the only remaining possibility is that the robber confessed in great detail to Ms. Walker. Her statements about Mr. Walker's confession, accompanied by the self-verifying details and the other circumstances surrounding the making of her hearsay statements to the police, certainly support a finding of exceptional circumstances, as well as trustworthiness.

(5) Although Ms. Walker is unavailable to the State, she was present at the trial and could be called by and examined by Mr. Walker. Md.Code (1974, 1995 Repl.Vol.), Courts & Judicial Proceedings Art., § 9–106 provides that, with exceptions not relevant to this case, "[t]he spouse of a person on trial for a crime may not be compelled to testify as an *adverse witness.* ..." (Emphasis added). If Ms. Walker's hearsay statements were admitted into evidence, Mr. Walker, her husband, could call her to refute the statements if they were untruthful or inaccurately recorded by the police. At the hearing in the instant case, the State's Attorney pointed out that Ms. Walker "is only unavailable because she has made herself unavailable to the State, not to the defense. She is and has always been available to the defense to proceed." This case presents the exceptional circumstance of trustworthy hearsay offered under the residual exception for unavailable witnesses where the hearsay declarant becomes unavailable to only one side, but the declarant is available to, and may be immediately called to contradict or explain her hearsay statement by, the opposing side.

These five circumstances, collectively, unquestionably justify the trial judge's decision to admit this 5–804(b)(5) residual hearsay. The two factors the majority found missing, (1)

exceptional circumstances and (2) equivalent circumstantial guarantees of trustworthiness, certainly seem to have been satisfied in the circumstances presented in the instant case; indeed, I have been unable to hypothecate a better case for the residual exception.

Because this case involves exceptional circumstances, it is difficult to find very much authority directly on point. There is, however, one closely analogous case, *State v. Bailey*, 179 W.Va. 1, 365 S.E.2d 46 (1987). *Bailey* was a murder trial. The defendant was involved in an affair with the victim's wife at the time he came to the victim's house and shot the victim. Immediately after the shooting, the wife/widow gave a statement to a deputy sheriff containing her account of the shooting and of earlier threats made by the defendant to the victim. Less than one week before trial, the victim's widow and the defendant were married. At trial, the new wife of the defendant exercised the privilege against adverse spousal testimony. *Bailey*, 365 S.E.2d at 47–48. The prosecution was permitted to use the wife's hearsay statement to the deputy sheriff under the residual exception. That ruling was affirmed on appeal. *Bailey*, 365 S.E.2d at 48–50. The West Virginia Supreme Court of Appeals held that all of the criteria for admissibility under the residual exception were satisfied. The Court found that, because the wife was involved in an affair with the defendant at the time of the shooting and married him shortly thereafter, her statement had some of the trustworthiness of a declaration against her interest; the fact that the statement was given to police shortly after the shooting and she verified that it was accurate gave it added trustworthiness, as did the corroborative evidence that the defendant did come to the house as related in the statement. *Bailey*, 365 S.E.2d at 49–50. The Court also stated: "The trustworthiness of the statement is demonstrated further by [defendant's] failure to challenge the statement on cross-examination." *Bailey*, 365 S.E.2d at 50 n. 4. Thus, the right of the defendant to have his new wife testify about her statement, even if she couldn't be called by the prosecutor, was a factor favoring the admissibility of the statement. Admittedly, most

cases under the residual exception are unique to their own facts, and neither *Bailey* nor any other case is directly on point, but *Bailey* is persuasive.

I trust the majority is not inadvertently showing an inclination to be more restrictive when the State offers residual exception hearsay evidence than when any other litigant offers such evidence, and is not inadvertently confusing the Confrontation Clause with the rules of evidence. No Confrontation Clause argument is raised in the instant case, and because of Mr. Walker's right to examine and impeach Ms. Walker, it is doubtful that the Confrontation Clause is even implicated.[2] The instant case is a criminal case where the hearsay was offered by the State against a criminal defendant, but the residual exceptions do not make any distinctions among classes of litigants. The residual exceptions and this Court's construction of them should be uniformly applied to the State, to criminal trial defendants, and to plaintiffs and defendants in civil cases. If the Court is reading the residual exceptions one way for criminal defendants and another way for all other litigants, the Court is perpetrating a great injustice on the State and is creating a baseless evidentiary distinction in order to favor criminal defendants over all other litigants. If the same unattainable standard for "exceptional circumstances" applied in the instant case is going to be applied in civil cases and whenever criminal defendants try to admit residual exception hearsay, then Maryland has no residual

---

**2.** *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), held that the Confrontation Clause does not preclude hearsay from being admitted under the residual exception against a defendant in a criminal trial. In *Wright*, the Supreme Court made it clear that because the residual exceptions are not "firmly rooted hearsay exceptions," particularized guarantees of trustworthiness must be demonstrated. The Supreme Court also indicated that, although particular guarantees may be shown from the totality of circumstances, the relevant circumstances are the intrinsic circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. The Court rejected consideration of extrinsic corroboration of the truth of facts contained in the statement. Perhaps this is because such extrinsic corroborative circumstances are not relevant to admissibility of other hearsay exceptions.

exceptions. I would affirm the evidentiary ruling of the trial judge.